The next case is Rivera v. Bryan's Home Improvement. Good morning, Your Honors. My name is Miriam Skolnick from Herzfeld & Rubin. I represent the appellate, Bryan's Home Decorating. The law, I think, is pretty clear that New York workers' compensation statute is supposed to be the exclusive remedy for any employee against his employer. The one exception, although it doesn't allow for a pass-through by an employee's claim against an employer, is that in the event of a grave injury, a third party who is sued by the employee can bring an action against the employer, but that's a very limited right of action. The grave injury, as the Court of Appeals has made clear, has to be strictly construed and it has to fit within the category listed in the statute, which . . . Let me just interject. I understand you want to focus on grave injury as the briefs do, but am I right in understanding that if we were to affirm the district court's ruling on contractual indemnification, that this discussion about grave injury in the workers' comp law is moot? Well, it is and it isn't. Part of the reason is that there is no insurance coverage for the contractual indemnification claim. So as a practical matter, it might moot it out, but then there's no one to collect from. The state insurance fund is by law prohibited from covering contractual indemnification claims and Bryan's did not have contractual indemnification coverage that covered third party actions brought by an employee, where the employee was injured. There was an exception. The contractual insurance company disclaimed. So technically, would it moot it out? It might moot it out. As a practical matter, I feel I have to disclose to the court that it would make a significant difference. So in terms of the grave injury, I think that the court here granted summary judgment based on two alleged grave injuries. One was the permanent and total loss of use of a hand. And the second was a brain injury that resulted in permanent disability. Now the court itself, when it gave the reasoning for granting summary judgment, and that was done precipitously with no notice, just on an oral motion, herself acknowledged that there's nothing in any of the medical records that says straight out the plaintiff lost the use of his hand. In fact, she says to the Home Depot and to plaintiffs, why isn't there a declaration that says it? And the reason is because no doctor made that finding. There are findings made about weakness in the hand. There is findings made about paresis, but there's no doctor who treated his hand or examined his hand who said that his hand was paralyzed or that he had total and permanent loss of use of the hand. But there is evidence, which as I understand it is uncontroverted, that he could not use his hand at all. Not medical evidence. And the statute requires medical evidence. On behalf of the third party plaintiff, in order to recover for grave injury, they have to come forward with competent medical evidence. And while the court considered the wife's affidavit as to his inability to use his hand, that was really inappropriate in terms of what the statute requires. But even if it was going to be considered, at most that would raise an issue of fact. It certainly would not entitle Home Depot, in this case, to summary judgment on the issue of grave injury. And the court itself found that it was intermittent. And intermittent, as a matter of law, is not permanent and total, which is what the statute requires. And the same was true with the court's finding with regard to the traumatic brain injury. Court said there was a traumatic brain injury, that's the end of it. But it's not the end of it. It only qualifies as a grave injury if the brain injury itself renders the plaintiff unemployable. And once again, no one, even Dr. Asanubi, who we contend her opinion should not have been considered by the court. But even if you were to consider it, she never attributed his inability to work to the brain injury. She attributed it to all his other injuries, which we submit were quite serious, but they were not grave injuries. And this is a matter of policy. On the question of the admissibility of her report, there's a suggestion in the briefing that when your client moved for summary judgment on the traumatic brain injury issue, that the district court had then to grapple with the Daubert issues, and that to the extent that the Daubert consideration appears abbreviated later, it's because it was done earlier. Do you agree with that assessment of the record? The motion for summary judgment did indicate that Dr. Asanubi's report was not reliable because it was based on the QEEG, which is not generally accepted, which Dr. Asanubi herself acknowledges. And there's a split in the case law. There are cases going either way. Right. But the court never indicated that she did a Daubert analysis. She never said, I've considered the arguments and I find it to be reliable. But you didn't argue against it, did you, or did you? Pardon? We did argue against it briefly in the motion for summary judgment. And we did argue against it during the oral argument when the court granted summary judgment. And the court's response was, well, that goes to weight, not admissibility. And I'm deeming it admissible, but then that begs the question, who weighed it? Usually when the court says it goes to the weight of the evidence, that's a jury issue. It's not an issue that suddenly allows the court to say, okay, I'm weighing it, no cross-examination, no opportunity to challenge it at all in terms of the weight to be attributed to it. But basically the issue becomes, okay, I've weighed it, summary judgment granted, but the bottom line is, even if you were to accept Dr. Asanubi's report, she never testified or affirmed or said that this traumatic brain injury was the reason he could not be employed. What her report actually says, it's page A523, is that when taking into consideration his non-existent education, inability to read or write in English or in Spanish, as well as his disabilities. And the New York courts have all said, with the exception of one fourth department case, but generally the accepted rule is that if you're disabled because of all of your other injuries, that does not qualify as a grave injury under the statute. Certainly at a minimum, the issue had to be resolved by the jury. And if I may address the damages issue, economic damages here were not supported by the affidavits that were presented. The opposition was so skeletal. It was. I will acknowledge that, but nevertheless. And I mean, I was looking for some basis that would support your position because it's such an unusual unfolding event. It happens so quickly and so on. But so long as the judge could find a jury that it was adequate to support the jury award, including both the economic aspect of it and the medical. Yes, ranges were given of how much it would cost to care for Mr. Rivera and so on. But there was no alternative. Your argument seemed to be that we were denied the right to cross examine and kind of punch holes in what was proffered. Nonetheless, there was no alternative presented and it was clear that Mr. Rivera was severely injured. So why was it unreasonable for the court to do what it did? What was not clear was that the services that the economic damages were supposed to cover would actually be needed. And that was the plaintiff's burden. And the fact here was, yes, there was an assumption that he would need a home health care aid because after all, his wife had to take care of him. But as the New York Court of Appeals said in Schultz, unless his wife testified, I'm not doing it anymore. I'm sick and tired of this. I'm going back to Ecuador or wherever. I don't want to take care of him anymore. That is a jury question to decide whether or not he would ever need those services. That's number one with regard to the home health aid. The second one is that with regard to the wheelchair, he was walking. Every doctor that saw him said he walked with a cane. He was not in a wheelchair. He walked with pain. He walked with pain, but no doctor said we expect that eventually he's going to be in a wheelchair. And as far as the, the judge recognized the New York rule that New York law requires very specific damage. It doesn't allow, very specific evidence, it doesn't allow you to speculate. And in fact, refused to award for a potential surgery because she said the evidence wasn't clear. Well here the evidence is not clear that he is ever going to need these services. And that was an issue that should have been subjected to cross examination. The doctors should have been asked. What's your basis for saying that he's going to need this? Or the home, the planner should have been asked. Where's the foundation for your claim that he's going to need these services? Because he bore the burden of proof. He would have envisioned a trial at which cross examination would have been extensively conducted and there would be a series of special verdicts paid for. As what happened, as happened with the pain and suffering claim. That's exactly our point. And would the economic damages, the, a positive or negative or other kind of determination on economic damages, would that have also affected the pain and suffering verdict, do you believe? Are they intertwined or are they separate? I think they would be separate. It would have to have been a specific jury questionnaire with individual questions as to each claim. But I guess I'm asking whether, had you had an opportunity to challenge the economic damages aspect of the damages award generally. Do you think that a lesser economic damages award might have affected also the- Well, the jury was not told about the economic damages award. So it's not like the jury took that into account and said, okay, we can give him less for pain and suffering because everything else is being covered. That was, the jury was never instructed as to that. Thank you. Court, have any more questions? Thank you. May I please court, Ronan Doherty on behalf of Home Depot USA. As the court- I also want to address the contractual indemnification argument. So my colleague asked at the start, does this, if we were to disagree with Bryan's on that issue, would it essentially render the grave injury question moot? Until a few minutes ago, I would have said yes to that, your honor. Certainly there are two independent grounds, separate and independent from each other, that allow Home Depot's third party claim against Bryan's under the statute and under the New York case law. And my first argument is that Bryan's can't put up any evidence to show that there was not a written contract for indemnity here, the argument that they make in the briefs. They concede on reply that they didn't make it in the trial court, and they offer no reason for this court to consider their argument for the first time on appeal. So yes, under workers' compensation law section 11, the existence of a prior written contract for indemnity authorizes the claim. And there is no evidence to contradict Home Depot's showing of that agreement, which is at page A51 of the record. And what we've heard for the first time today, I don't believe is in the record, is that there's a question of insurance coverage for Bryan's on that theory. But if Mr. Rivera, or sorry, if Home Depot only prevails on indemnity on the contract, then there may still be an issue with whether or not Bryan's and its insurers will pay for that. And so, I mean, I can go through the contract and give you the reasons why it applies. But I don't think there's much contest on that here today. And so- Could you address the, I mean, the contract isn't signed, it's dated the day before the accident. It's, yes, they have been working for Home Depot for five years, but it seems very odd that there is no signed contract, given all the many, many jobs that were done, and apparently no purchase order. I mean, why should we credit that this actually stated the party's intentions as to terms? Well, you have a couple of points, Your Honor. First, you have two contracts that are attached, two versions of the contract that are attached to Home Depot's third party complaint. You have the 2015 version, which as you've pointed out, is filled out in handwriting the day before the accident. The same exhibit also includes the 2007 version of the contract that has the very same indemnity provisions. So you- Is that one signed? Is either signed? There's, one is filled out in handwriting, but is not a signature. Right, neither is signed. Right, and under the New York Court of Appeals case of Flores, which both parties cite and signed agreement, it is enough to, as long as there is objective evidence that the parties accepted the agreement. What objective evidence is there that the parties accepted, that Bryan's accepted this indemnity? Well, you have the testimony of Home Depot's witness, Jorge Palacios, who testified, identified the agreement, said that was the agreement that the parties had done work under. And that all the jobs that Bryan's had done for Home Depot over several years were done pursuant to the service provider agreement. And yet there was no signed agreement ever, and there was no purchase order. Well, at the deposition, there was testimony about the purchase order and discussion about going to get a copy of it if anybody wanted to follow up, and that evidently didn't happen. The critical point, however, is that there is testimony and admissions for the trial court from Bryan's, admitting that they would never have had this job were it not for the Home Depot relationship, which was subject to the service provider agreement. And beyond that, to sort of put an end to any question about the contract, there is no evidence from Bryan's in the trial court or here today from Bryan's saying, no, we never accepted that agreement. There's just a failure of proof on that point. If I may turn to the grave injury, there's a lot of confusion in the briefs here about the procedural unfairness. And to track it, you really have to sort of pay attention to whose summary judgment motion we're talking about at the time. On the issue of Daubert, for the brain injury, that motion was not made at the time Bryan's moved for summary judgment. So the district court had no obligation to conduct a Daubert hearing at that point, and no obligation to do anything further than the adversaries asked of her. The way this case went through on grave injury, it's step by step, but the court sees the evidence on Bryan's motion for summary judgment and understands that Bryan's has no evidence. Bryan's presented, there was no examination, no witness. Let me ask you about that. I was concerned, given the breakneck speed at which some of these proceedings took place, that Dr. Lechtenberg's report was excluded by the district court. And I gathered there was some, I don't know all the details, but I gathered there was some debate, at least about when Mr. Rivera was made available and what reports were made available to whom when. But given the gravity of this aspect of the proceedings, I wonder why it wasn't an abuse of discretion for the district court not to take into consideration Dr. Lechtenberg's report. Could you address that? Well, so the short answer to that is that Dr. Lechtenberg's, the examination for Dr. Lechtenberg was not done within the time period that the court gave. But let me get to the end as well, because if the court had allowed Dr. Lechtenberg's report to come in, it wouldn't have done Bryan's very much good. Because in addition to creating perhaps an issue effect on the brain injury, Dr. Lechtenberg at page 938 of the record measured Mr. Rivera's, his range of motion for his wrist and found zero range of motion for the left hand as compared to normal for the right. And that is evidence that would show the other grave injury and confirm that. And so- I'm sorry, I'm looking at that right now. This is range of motion, shoulders, knees, ankles, feet. There should be range of motion for the right and left hand. And wrist, that's right. He demonstrated no movement at the left wrist. That's correct. And so, had that report come in, and let me be clear, Home Depot's argument is that it was because it was conducted outside discovery for the purpose of a mediation in January of 2018. And the court applied the very same rules about excluding late blooming expert evidence against the plaintiffs and Bryan's in this case. But there was a difference also of opinion on the cognitive injury. There would have been a difference of opinion. But the issue here is not whether or not in the appendices, the voluminous appendices we have in this case, whether there's conflicting evidence. The question was, did Bryan's present to the trial court evidence capable of being reduced in admissible form at trial? And by blowing the deadline by four months, Bryan's did not make that count. Can you address your adversary's argument that there's really no basis for finding that the district court performed a gatekeeping function in considering Dr. Osanubi's report? Well, so, obviously, I don't agree with that. The district court was not asked to do that in connection with Bryan's motion for summary judgment. On your motion. On Home Depot's motion for summary judgment, there was a motion pending. It was later amended and argued in connection with the damages trial. But there was a motion pending, and at the hearing on Home Depot's motion, Bryan's counsel referenced it. The trial court noted familiarity with it and said that she thought that the objections, which only went to the quig, and not the rest of Dr. Osanubi's diagnosis and treatment of Mr. Rivera. Help me understand if I'm misunderstood, but the quig was a pivotal basis for the diagnosis of traumatic brain injury. There's no question that the quig was important, and you'll see a lot of this in the eventual testimony of Dr. Osanubi at trial. There's a reason she asked for the quig. She observed him and conducted, I think, a three plus hour examination and examined his medical records. And because of the electrocution, because of what she saw in the MRI, she felt like he needed to be tested for the traumatic brain injury. And so even without the quig, which we think was absolutely within the court's discretion to admit it, even without it, there was some evidence that would have called upon Bryan's to come forward to contradict and show that there's going to be a disputed trial. I mean, that's really what happened at every stage here, is that the district court, very familiar with the record, sees that one side has evidence and the other doesn't. At one point, for the pre-trial conference, the court says, the clerk and I were sort of wondering whether the defendants would have any witnesses, so this is an unusual case. But to grant summary judgment to Home Depot, you have to make some determination that the expert report is admissible under 702. It has to be admissible in order to demolish any material issue of fact on the question of grave injury. Right, and so two points on that. First, there was only a request to exclude the quig. So there was other evidence in Dr. Osanubi's testimony that would have put Bryan's to the burden of saying, okay, I'm going to be able to put on evidence, not just cross-examine a trial. The cases are legion that a cross-examination hope is not a plan, right? That's not evidence. You need more than that. Once there is some evidence in the record from which the jury can find a brain injury, it is Bryan's burden to conform with other evidence to contradict it. That's the great failing here. And so, Home Depot's view is that under the circumstances, the Daubert analysis was as fulsome as the court was asked to give. And it is an adversary process. In the end, it's not the judge's job to correct for the lawyering. But there was, even setting aside the Daubert decision, if this court were to decide that was an abuse of discretion, the rest of Dr. Osanubi's testimony was enough to put Bryan's to the burden of coming back and putting on its own evidence. And there they had nothing. With regard to the rest of the testimony, the problem with the report is that she, the doctor relies on the clinical presentation and other things unrelated or separate from the brain injury in saying that he is totally disabled. And that that's inconsistent with the grave injury requirement. Well, so two points on that. So, at the very next page, I think it's A524, Dr. Osanubi goes on to say that the injuries, that there's an electrocution that causes the traumatic brain injury. And as a consequence of that, Mr. Rivera is disabled. He's not going to be able to do anything for himself without help for basically the rest of his life. And so, part of it can be answered by looking at the record. The very next page goes on to provide some of the conclusions that Bryan says are absent. But beyond that, the law, it can't be that just because Mr. Rivera didn't have a backup plan to go play a violin at Carnegie Hall, that this remedy isn't available. I mean, Bryan's Home Depot, everybody else has to take this plaintiff as they find him. And the electrocution and brain injury has rendered him unemployable for any purpose. And that's not just as a consequence of his education, that's as a consequence of the injury. Thank you. May it please the court, my name is Karen Dechter and I represent Plaintiff Daniel Rivera. The district court properly granted Mr. Rivera's summary judgment motion for economic damages because Bryan's skeletal two page opposition brief lacking any citation to the record whatsoever did not offer concrete evidence to contradict or undermine plaintiff's expert damages calculations. Future loss may be established through expert testimony. And here, Mr. Rivera met his burden of establishing his future medical expenses with reasonable certainty by submitting two expert reports. One from Dr. Bialsky, who prepared a life care plan and vocational assessment for Mr. Rivera. And second, Dr. Misson's medical care cost summary, which calculated the present value of those medical costs. Dr. Bialsky gave ranges of costs that might be incurred, ranging on the million of dollars scale. Why was that sufficiently certain? There was a huge array there, and then they gathered that the economic witness just took the average of the bottom and the upper part of the range and reduced that to present value. That seems enormously vague. Why is that sufficiently definite to support this damages award? Well, two things. One is that was also dealt with at trial where plaintiff conceded the bottom end of those ranges, I believe. That's not in the record. But second, those were from actual quotes. You're saying plaintiff conceded the accuracy of the bottom end of the ranges on each of those elements of damage that Bialsky put forward? Let me just step back. I understand what you're saying. For the home health aid, for instance, there was a difference. There was a bottom range and a top range. And Dr. Misson took the average of those. There was no objection to that raised to the district court. There was no evidence put in by Bryans as to why that was incorrect or improper or unreasonable. There was no objection whatsoever as to that approach. Isn't that part of what they're saying now on appeal, that they didn't have an opportunity through cross-examination, whatever, to challenge the methods that were used? Well, they had ample opportunity. They could have deposed any of plaintiff's experts, but for whatever reason, chose not to. In fact, the district court noted at a number of times that it was mystifying the way that Bryans failed to defend its case, especially faced with a very substantial demands. And for whatever reason, chose not to. It could have retained its own damages expert to challenge it. It could have done a number of things. It could have submitted an opposition brief that was longer than two pages that tried to point to something in the record. I think their failure to do so is a result of there being no evidence in the record that they could rely upon because of their failure to adequately defend the case. Did they have an opportunity to depose the expert? Of course they could have. And they did not. Exactly. And they mounted no, unlike the issue we just heard of about great injury. They mounted no Daubert challenge or challenge to these experts' qualifications or methodology. And on appeal concede that the reports are admissible. Dr. Bialski is a certified life care planner and a certified rehabilitation counselor who created a comprehensive life care plan designed to meet his needs through age 79. In creating the plan, he reviewed, as the district court noted, 36 medical records, evaluations, reports, and procedures. He conducted an in-person evaluation of Mr. Rivera in compliance with the ethics of a certified rehabilitation counselor. He consulted one-on-one with one of Mr. Rivera's treating physicians, a Dr. Jose Colon. And he also relied on his own experience and expertise. These records indicated that Mr. Rivera was severely injured as a result of the electrocution injury. He suffered on the job. He's unable to dress himself, to bathe himself, to feed himself, to even use the bathroom independently. And that's reflected not only in Dr. Bialski's report, but in the notes and his treating physicians, his treating neurologist, Dr. Ratsker, his treating orthopedist, Dr. Colon. And his other treating orthopedist, Dr. Seidenstein. They also indicate that Mr. Rivera experiences frequent near falls, which renders him, for the most part, housebound. And that while he can use a cane to walk, he can really only do so with great pain and difficulty, essentially dragging his left lower extremity. And that's noted by Dr. Bialski's personal observation of Mr. Rivera walking, as well as Dr. Ratsker at 730 to 731 of the record. So because Mr. Rivera submitted this properly supported motion on the basis of two experts that Bryans does not challenge. The burden was then on Bryans to offer concrete evidence to challenge plaintiff's experts' damages calculations. And they just did not meet that burden for the reasons I said and for the reasons I just noted to Judge Ramos. They didn't depose these experts. They didn't even offer potential lines of cross-examination that they might explore. And it was not, as the district court noted, its job to fashion lines of cross-examination out of whole cloth. And then speculate as to whether or not they might be effective just to protect a litigant that chose for whatever reason not to properly defend its case. Let me ask you this. Would the jury have been compelled to accept the testimony of your experts? It would have. The jury would not be at liberty to completely disregard unimpeached, unimposed testimony that is beyond the competence of a lay person. And that's laid out in the Brown v. County of Nassau case that Bryan cites, 736 F SUP 2D at 620. Thank you very much. We respectfully request that the court both affirm the Economic Damages Award as well as the Grave Injury Award in light of the representation here that affirmance only on the contractual indemnification would leave my client facing $6.5 plus million of medical costs without any coverage or means of recovery. Thank you. Your Honor, if I may, I was going to address the contractual claim first, but now the council raised the issue. Plaintiff will never be left without a means of recovering. Plaintiff has a judgment against Home Depot. Plaintiff cannot recover against the state insurance fund or against his employer. So regardless of what happens with the issue here, the grave injury or anything else, plaintiff has their judgment against Home Depot that they can enforce to the full extent of the judgment. And given that Home Depot didn't appeal, my sense is that even if we get a reversal here, plaintiff can enforce that judgment. But putting that aside, just with regard to the contractual indemnification claim, I just want to point out that according to the complaint that was filed, the third party complaint, the allegation was made that the contract was signed sometime before September 27th, 2016. That's in their pleading. Calling into question this contract that's dated the day before the accident that happened here. Seems to be a little bit convenient. What can you point to to suggest that the course of conduct between your client and Home Depot over the past five years wasn't governed by these terms? What I would point to is the fact that we both cite to Flores, right? The Flores is the court of appeals case that says that even if it's not signed, you can look at the course of conduct. And one of the key factors that the court considered was the fact that in that particular case, the contractor had actually gone out and purchased contractual liability coverage. Because they had assumed that. Here, that was not the case. So it raises, at minimum, an issue of fact. And- And what you just said, that is not in the record, though, is it? The statement you just made. That there's no contractual coverage, no. But that is, in fact, there was a disclaimer here, and I'm not sure if Home Depot was aware of that at the beginning. But there was an actual disclaimer by the company that would have covered contractual indemnification because there was no coverage for injuries to an employee. And as far as the issue of the state insurance fund, that's statutory. Section 76 of the Workers' Compensation Law says that the state insurance fund cannot cover liability assumed by contract. As far as the issue of grave injury, I go back again to the fact that it's Home Depot's burden to establish a grave injury. It is not the employer's burden to establish that there was no grave injury. Now, our motion for summary judgment was based on the fact that looking at the competent medical evidence, there was no medical record that said that this particular plaintiff had lost, total and complete loss of use of his hand, or a traumatic brain injury that caused him to be unable to be employed. But even your own expert, as your adversary points out, said that Mr. Rivera demonstrated no movement at the left wrist. Yes, but when we moved for summary judgment, we didn't have that report, Your Honor. I know, but- And at this point, it's not in the record. It was not accepted by the court below. And he's, with all due respect, he's a neurologist. He's not an orthopedist. And we never questioned him about it. It was never presented. The parties objected to it. And I don't think that they can turn now around having objected to it and rely on that as the evidence. At the time that the motion was made, we relied on the medical evidence that plaintiff had put forward. And that medical evidence did not contain any statement, as the court acknowledged, that said that plaintiff had lost the use of his hand. And as far as the TBI, I know that counsel refers to A524 as saying that that says that he was disabled because of the brain injury, but that's really not true. As a consequence of his electrocution injuries, and then in parentheses, inclusive of traumatic brain injury. Inclusive, that doesn't mean exclusively because of the brain injury. And that's what the New York Court of Appeals has said is required. It has to be related solely to the brain injury, not to all the other injuries combined. Because then it would do away with the whole statute, which says it's an exhaustive, non-illustrative. But certainly at a minimum, it raises an issue of fact. For the court to, without notice, to Bryan's, turn around and say, I'm considering a motion to suffer summary judgment because, after all, there's a deep pocket here. You can pay. That's not the basis for summary judgment. I mean, and that was ultimately what motivated the court here, was the frustration that the case wasn't settled. There was also frustration that nothing had been done on behalf of Bryan's, correct? Nothing had been done, I will admit, but part of that reason was because the grave injury issue as it was presented. I mean, Home Depot denied there was a grave injury in their answer to the complaint. They asserted it as an affirmative defense. There is no grave injury. They weren't in that posture by the time of summary judgment, correct? But that is correct, but by that point, we were precluded from going out and retaining an expert. At that point, yes, I will agree, would it have made my job easier if we had gotten an expert and we had it? Yes, that's fine, but as even- It made the Justice's job easier too. Yes, but as the Judge Trager in the Mustafa case, which is a case of plaintiff's site for the proposition that it's a question of fact. As he basically summarizes the law, if there's a plausible case to be made for grave injury, it becomes a question of fact for the jury to decide, and that's the minimum. And then conversely, a claim of grave injury must be dismissed as a matter of law if the alleged injury does not fall within the narrow parameters of section 11. And we would submit that the evidence here presented, the medical evidence, takes this case out of the grave injury. But even if it raised the question of fact with regard to whether or not there was a grave injury, that's an issue of fact to be resolved by the jury, especially when the court acknowledges that it's the weight of the evidence that has to be resolved. The weight of the evidence is an issue for a jury. And finally, with regard to the damages, I would just reiterate again, our argument was not that the numbers may have been wrong or that it was miscalculated. But the point of the fact is that under New York law, you cannot recover unless you provide a factual foundation that the future services are going to be needed. And that entitles us to cross-examine both the experts and the witnesses, and the plaintiff, and the plaintiff's wife, as occurred at the damages trial, to find out, will he need these services? The Court of Appeals in Schultz basically said, we're not saying that you have to become dependent, but you at least have to have testimony that your neighbor in Schultz, he was getting services from his neighbors. And the court charged the jury, you can award the value of the services. And the Court of Appeals says, no, you have to prove that your neighbors are not going to continue to provide the services. Well, here, there's absolutely no indication that plaintiff's wife was not going to continue to provide the services. At a minimum, we were allowed to question her about that issue. And as far as the wheelchair, well, yes, he was dragging his foot, but then no doctor said we expect that within a year he's going to be in a wheelchair. In fact, he testified himself, the plaintiff, that the doctors told him the dragging would get better. Thank you. Thank you. Thank you all. Well argued.